JOHN E. KUHN JR.
United States Attorney

ADAM ALEXANDER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: adam.alexander@usdoj.gov

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:19-cr-00105-JMK-MMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHANNON ROBERT BELL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT SENTENCING MEMORANDUM**

<u>**SUMMARY OF SENTENCING RECOMMENDATIONS**</u>

**TERM OF IMPRISONMENT** ................................................................. **97 months**

**SUPERVISED RELEASE** ........................................................................ **15 years**

**SPECIAL ASSESMENT (JTVA)**...............................................................**$100 + $5,000**

**AVAA ASESSMENT**................................................................................ **$35,000**

COMES NOW the United States of America, by and through undersigned counsel, and hereby files this Sentencing Memorandum. For the reasons stated herein, the United States respectfully recommends that the Court impose a low-end guideline sentence of 97 months incarceration to be followed by a 15-year term of supervised release.

## I. INTRODUCTION

The Defendant, while employed as an on-site counselor for emotionally troubled youth, moonlighted as a moderator of various forums and platforms used by fellow pedophiles to curate and distribute images and videos depicting child sexual exploitation, including images of pre-pubescent minors. The Defendant was only apprehended because he chose to discuss potential child sex tourism with an undercover FBI agent, leading to the investigation by FBI's Anchorage Division and his prosecution and plea in this matter.

## II. STIPULATED FACTUAL BASIS

The defendant has stipulated to and admits the truth of the allegations in Count 2 of the Indictment and the truth of the following statement, and the parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty plea and for the imposition of the sentence:

The Kansas City Division of the Federal Bureau of Investigation (FBI) was investigating a private, invitation-only KIK chat group created by a pedophile with the moniker "bighead2020" in August of 2018. During the course of their investigation, the Kansas City FBI agents observed that another member of the group using the pseudonym "HardSteve719" attempted to post a non-functioning DropBox link to child exploitation

U.S. v. Bell
3:19-cr-00105-JMK-MMS          Page 2 of 10
Case 3:19-cr-00105-JMK-MMS   Document 98   Filed 02/22/22   Page 2 of 10

materials on September 15, 2018, and then on September 29, 2018, posted a video depicting the child sexual exploitation of two pre-pubescent female children directly to the chat group.

Kansas City FBI agents served an administrative subpoena on KIK for subscriber information related to the "HardSteve719" account in September 2018. That subpoena return included Mr. Bell's registration email address (iwant2dobadthingswithyou@gmail.com) and identified one of the IP addresses used by Mr. Bell to access KIK, which resolved to GCI in Alaska. A follow-up subpoena was served on GCI in October, 2018, for that IP address, and it was identified as one used by the residential internet account registered to Mr. Bell, in his own name, at his residence in Anchorage, Alaska.

On December 6, 2018, Kansas City FBI agents engaged in an undercover chat with Mr. Bell both through SMS and KIK messaging, purporting to be a fellow pedophile and parent of juvenile children. In those chats, Mr. Bell described his long-standing pathology as depicted below as excerpted from Bates 420:



U.S. v. Bell
3:19-cr-00105-JMK-MMS	Page 3 of 10
Case 3:19-cr-00105-JMK-MMS   Document 98   Filed 02/22/22   Page 3 of 10



Mr. Bell expressed an interest in traveling in order to sexually exploit the undercover's fictional children. Efforts by Kansas City FBI to lure Mr. Bell to their jurisdiction were unsuccessful, and in lieu of prosecuting his activity in their area of operation, referred the case and transmitted their case file to the Anchorage Division for further investigation. Anchorage FBI opened the case in June, 2018.

After the search warrant for Mr. Bell's person and residence was granted in matter 3:19-mj-00257-MMS, that warrant was executed by the FBI without incident. Mr. Bell was cooperative, and agreed to non-custodial interview. In that interview, Mr. Bell admitted that had been "chatting" online for approximately 10 years. Mr. Bell stated that his chats regarding the sexual exploitation of had been ongoing for two years, and that he would primarily use the Kik application on a cellular phone. When asked what ages of children he preferred sexually, Bell answered "9 or 10" or "5 or 6," but that it was just chatting and fantasy.

After initially minimizing his conduct in the interview with the FBI, Mr. Bell ultimately admitted that he had posted images and videos depicting child sexual exploitation involving children as young as six years of age approximately 100 times in

U.S. v. Bell
3:19-cr-00105-JMK-MMS         Page 4 of 10
Case 3:19-cr-00105-JMK-MMS   Document 98   Filed 02/22/22   Page 4 of 10

the preceding several years; that he was a moderator of a Kik group focused on incest, and that he worked as a therapist treating minors primarily between the ages of 13 and 17 who were struggling with "pornography and sex addiction issues."

Following the execution of the search warrant at his residence, Mr. Bell volunteered to undertake a polygraph examination regarding his history of hands-on abuse on July 1, 2019. At that time he was re-Mirandized, and executed additional written Miranda waivers as well as executing a consent to the polygraph examination itself. The report summarizing that process states that "During the pre-test phase, Bell provided that his interest in incest, images and discussion of sex with teens, and sex chats and text messages about sex with minors began approximately five years ago" and that "he uses his cellular telephone to access the sites and masturbates while viewing the images and while engaged in the chat room or text conversations." He further reported that he has had explicit chats with "a female who says she is 17 and lives in Texas." Id. Mr. Bell denied any sexual contact with anyone under 17.

## III. SENTENCING CALCULATION

### a. Statutory Maximum Sentence and Sentencing Guideline Calculation

The penalties for the offense of conviction, a violation of 18 U.S.C. § 2252A(a)(5)(B), include a mandatory minimum term of five years and up to 20 years imprisonment; a $250,000 fine; and a term of supervised release of five years to life. The defendant, who is not indigent, also faces a mandatory JTVA assessment of $5,000 and a penalty under the AAVA of up to $35,000 to aid the victims depicted in images and videos of child sexual exploitation.

U.S. v. Bell
3:19-cr-00105-JMK-MMS        Page 5 of 10
Case 3:19-cr-00105-JMK-MMS   Document 98   Filed 02/22/22   Page 5 of 10

### b. The Probation Officer's Recommended Sentence

The Probation Officer recommends a below-guideline sentence of 66 months' imprisonment. Doc. 86 (PSR) at "Sentencing Recommendation." Upon completion of the defendant's term of incarceration, the Probation Officer recommends ten years of supervised release. Id. Probation recommends no fine, $5,000 in restitution, no assessment under the JVTA, and a $3,000 assessment under the AVAA. Id.

## IV. GOVERNMENT'S RECOMMENDATION

Consistent with the terms of the plea agreement (Doc. 71), the United States asks the Court to impose a low-end guideline sentence of 97 months' imprisonment, followed by a 15-year term of supervised release.

## V. 18 U.S.C. § 3553(a) Analysis

### a. The Nature and Circumstances of the Offense and History; Characteristics of the Defendant; Seriousness of the Offense; Need for Adequate Deterrence; and Protection of the Public

As discussed in detail above, the Defendant has stipulated that he was not only an avid consumer of images and videos depicting child sexual exploitation for his own gratification but chose as well to assist other pedophiles and facilitate the further dissemination of these materials. Enthusiasm is a merit in a number of innocuous hobbies; indeed if the Defendant had devoted the same time and attention to model trains or fantasy football the world would be a better place. What he chose to do instead, unfortunately, is devote the same level of enthusiasm and passion in collecting and curating images depicting the sexual abuse of pre-pubescent children. As the Court knows, the Defendant's actions have served to perpetuate the abuse suffered by the

U.S. v. Bell
3:19-cr-00105-JMK-MMS    Page 6 of 10
Case 3:19-cr-00105-JMK-MMS   Document 98   Filed 02/22/22   Page 6 of 10

children that the Defendant used for his own arousal and sexual gratification. It wasn't enough for the Defendant to passively collect and possess these images; for whatever reason he felt the need to propagate child exploitation material for other pedophiles at the same time that he, perversely, was choosing to act as a counselor for troubled children.

    b.    **The Seriousness of the Offense**

A substantial term of imprisonment is appropriate in this case. The protection of the public during this period of confinement is direct and obvious. However, as important to the long-term safety of the community – as well as the defendant's prospects for a productive return to society is a lengthy term of supervised release.

A 15-year term of supervised release will allow the Court to supervise the defendant - monitoring his computer access, social networks, and access to children, as well as allowing the Court to continue to provide sex offender and mental health services directed at the defendant's sexual interest in children. In the United States' view, the potential harm that would occur should the defendant recidivate – and the population upon whom that harm would be inflicted – require a substantial term of supervised release following the Defendant's discharge from BOP custody.

    c.    **The Need for Educational, Vocational, or Other Care or Treatment**

The United States does not consider this factor to be significant in the Court's calculation of a term of imprisonment. However, the United States recommends that the defendant be detained at a Bureau of Prisons facility that offers either a Residential Sex

U.S. v. Bell
3:19-cr-00105-JMK-MMS    Page 7 of 10
Case 3:19-cr-00105-JMK-MMS   Document 98   Filed 02/22/22   Page 7 of 10

Offender Management Program (SOMP), or Non-Residential SOMP.[1] These programs will allow the defendant to continue addressing the issues that have led to his paraphilic interest in juveniles.[2]

### d. The Kind of Sentences Available and the Sentencing Range Established by the Sentencing Commission

The United States' requested sentence is within the applicable guideline range.

### e. Sentencing Disparity

The United States requested sentence will not result in an unreasonable disparity. Recent sentences imposed by this Court and others support the United States' requested sentence. As appropriately cited in the PSR, the sentence recommended by Probation is line with the "average" sentence imposed by courts nationwide for individuals with the same criminal history category and subject to the same sentencing guideline. However, given the unique facts in every case, the United States cautions against overreliance on recently adjudicated cases. "While sentences imposed by other courts may be a consideration for a district court, such information does not set a median, floor, or ceiling." United States v. Miller, 665 F.3d 114, 122 (5th Cir. 2011). While it is clear that sentencing courts in this District and many others regard the advisory sentencing ranges resulting from a guideline application in child exploitation cases as too high, it is equally clear that they can nevertheless serve as helpful guideposts for the parties should the

---

[1] This recommendation is dependent upon space availability and security classification.
[2] A residential SOMP lasts from 12 to 18 months. Referrals to the program are generally made when an inmate has 36 months remaining on their sentence. As such, given the mandatory minimum sentence, there is no term of imprisonment the Court might impose which would preclude the defendant's voluntary participation in a sex offender program.

U.S. v. Bell
3:19-cr-00105-JMK-MMS          Page 8 of 10
Case 3:19-cr-00105-JMK-MMS   Document 98   Filed 02/22/22   Page 8 of 10

court choose to adopt a uniform "discount." Either way, something approaching the lowest possible sentence for an individual who has chosen to work as a counselor for troubled children while actively trafficking in images and videos depicting their sexual exploitation tortures logic and violates a common-sense understanding of proportionality in sentencing.

   f.    **Restitution**

The United States is requesting a separate restitution hearing set out 60 days from the date of sentencing.

   g.    **JVTA Assessment**

The Justice for Victims of Trafficking Act (JVTA) directs that Court impose a $5,000 assessment on any "non-indigent" defendant convicted of a child pornography offense. The United States asks that this fine be imposed. While the defendant is indigent at this time for purposes of representation, this does not preclude application of the assessment give the defendant's ability to earn an income following his release from prison. See United States v. Kelley, 480 F.3d 1205 (8th Cir. 2017) (ordering payment of the $5,000 JVTA assessment on a presently indigent defendant who was an "Eagle Scout with a college degree" with the potential in the future to be "employed and to earn the money from which he could pay the assessment."); see also United States v. Janatsch, 722 Fed.Appx. 806 (10th Cir. 2018) (unpublished). The evidence supports the conclusion that the defendant will "become able to pay" the requested $5,000 assessment.

U.S. v. Bell
3:19-cr-00105-JMK-MMS        Page 9 of 10
Case 3:19-cr-00105-JMK-MMS   Document 98   Filed 02/22/22   Page 9 of 10

There is nothing to indicate the defendant will unable to work and earn income following his release from prison.[3]

## VI. CONCLUSION

For the reasons stated herein, the United States respectfully asks the Court to sentence the defendant to 97 months' imprisonment, to be followed by a 15-year term of supervised release. This sentence recognizes the nature and circumstances of the defendant's crime, his defendant's history and characteristics, as well as the seriousness of his conduct. The sentence will also serve as a deterrent to future crime and will protect the public from the defendant.

RESPECTFULLY SUBMITTED this 22nd day of February, 2022, in Anchorage, Alaska.

JOHN E. KUHN, JR.
United States Attorney

*s/ Adam Alexander*
ADAM ALEXANDER
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2022,
a copy of the foregoing was served
electronically on:

Rex Butler, Esq.
*s/ Adam Alexander*
Office of the U.S. Attorney

---

[3] Furthermore, should the defendant return to Alaska following his release from Bureau of Prison's custody, he may regain eligibility for Alaska Permanent Fund Dividend (PFD). See https://pfd.alaska.gov/Eligibility/Requirements.

U.S. v. Bell
3:19-cr-00105-JMK-MMS　　　　Page 10 of 10
Case 3:19-cr-00105-JMK-MMS　Document 98　Filed 02/22/22　Page 10 of 10