Rex Lamont Butler
745 W. 4th Ave., Suite 300
Anchorage, Alaska, 99501
(907) 272.1497
(907) 276.3306
Attorney For Shannon Robert Bell

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>SHANNON ROBERT BELL )<br>  )<br>Defendant. )<br>_____ ) | Case No. 3:19-cr-00105-JMK |

## DEFENDANT'S AMENDED SENTENCING MEMORANDUM

**PLEA AGREEMENT**

The defendant, Shannon Robert Bell (Bell) appeared before Chief U.S. Magistrate Judge Deborah M. Smith on August 30th, 2021 and pleaded guilty to Count 2, Distribution of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) of the indictment and admitted the Criminal Forfeiture Allegation.

The government agreed to not further prosecute Bell for any other conduct related to the offense; to dismiss Count 1 of the Indictment; to recommend a sentence at the low end of the guideline range; and to recommend a two-level reduction for acceptance of responsibility and, if USSG §3E1.1(b) applies and to move for an additional one level reduction.

1

**FACTUAL BACKGROUND**

On August 18th, 2018, an undercover FBI agent (Agent) was invited by "bighead2020" to join a private chat group created by "bighead2020". The Agent determined another member, HardSteve719, attempted to repost links originally posted by "bighead2020" but the link did not work.

On September 29, 2018, HardSteve719 posted a video portraying two prepubescent juvenile females penetrating their privates in a sexual manner. Investigators identified HardSteve719 as Shannon Robert Bell. On December 6th, 2018, the Agent engaged Bell in a private chat in which Bell reported that he preferred juveniles around nine (9) years old but had gone lower. Bell told the Agent that when he was younger, he penetrated a five-year-old boy he was babysitting.

The Agent purported to be female living in Kansas City with two daughters, ages 11 and 7. Bell appeared to express an interest in engaging in a sexual relationship with the daughters. The Agent made several attempts to get Bell to travel to Kansas City but to no avail.

On July 1st, 2019, Agents searched Bell's residence. He was cooperative and admitted to engaging in online activities regarding the sexual abuse of minors. Bell stated that it was just chatting and fantasy. He volunteered for a polygraph examination and there was no indication that he failed it.

**SHANNON ROBERT BELL THE INDIVIDUAL**

Bell was born on January 19th, 1966, in Seattle, Washington, to Gerald and Madeline Bell. Both parents are deceased. Bell has two (2) brothers ages 54 and 51 years old, who reside in Montana and in Michigan respectively. Bell has resided in Alaska since he was approximately six years old.

At nine (9) years old, Bell found his father's pornographic magazines and started watching pornography with his mother at the age of twelve (12). Bell is married and without children.

**BELL'S HEALTH**

Bell suffers from chronic depression, hypertension, sleep apnea, anxiety and attention deficit hyperactivity disorder (ADHD) and is pre-diabetic. He depends on multiple prescribed medications that include Buprorion, Lexapro for depression, Xanax and he uses a Bipap machine.

Bell has suffered from chronic depression for most of his life and has had suicidal ideation off and on for 40 years. He has seen a psychiatrist since 1998. Bell believes that he would have killed himself but for intervention. Bell is currently dependent on Buprorion and Lexapro for his depression. Since the initiation of this case, Bell has seen a counselor at Pierlot Counseling weekly.

**SENTENCING GUIDELINE**

A district court must correctly calculate the Sentencing Guidelines range before imposing a reasonable sentence. Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007).

1. **BASE OFFENSE LEVEL**

The guideline for 18 U.S.C. § 2252A(a)(2)(A) offenses at USSG §2G2.2. the charge Bell pled to places his base offense level is **22**.

2. **SPECIFIC OFFENSE CHARACTERISTICS**

"While the sentencing court may adopt the factual findings of the presentence report," a district court "may not adopt . . . conclusory statements unsupported by the facts or the Guidelines." Becerra, 992 F.2d at 966; accord United States v. Navarro, 979 F.2d 786, 788 (9th Cir. 1992)." Gamez-Urduno, at 464.

The PSR at page 5 paragraph 16 alleges that because the material involved a prepubescent minor, the offense level is increased two levels. USSG §2G2.2(b)(2). However, it has never been definitively established that the girls were prepubescent or were not at least 12 years, as required by USSG §2G2.2(b)(2). As such, there is no valid basis to support a 2-point enhancement in the PSR.

Further, the PSR at page 5 paragraph 19 alleges that because the offense involved one video, which counts as 75 images, and 532 images, the offense level is increased five levels. USSG §2G2.2(b)(7). The allegation that Bell possessed 532 images is not definitively established. But even if it was substantiated the indicted is limited to specific dates. There is nothing to reasonably support the allegation in relation to the date in the indictment. There is no basis for the 5 points enhancement. Consequently, the 7 points enhancement, based on specific offense characteristics is no warranted.

Bell knowingly engaged in distribution, other than distribution described in USSG §2G2.2(b)(3)(A)-(E), the offense level is increased two levels. USSG §2G2.2(b)(3)(F). **+2**

Because the offense involved the use of a computer, the offense level is increased two levels. USSG §2G2.2(b)(6). **+2**

4. **ADJUSTMENT FOR ROLE IN THE OFFENSE**

    There is no basis for adjustment for role in offense. Bell was clearly wrong, but he was not the lead actor. The leader was "bighead2020", the character that invited the Agent to join the chartroom.

5. **ACCEPTANCE OF RESPONSIBILITY**
6. Bell agrees with the PSR writer's assessment (Page 6, Paragraph 25) that he should receive a reduction of two (-2) points from his adjusted offense level for acceptance of responsibility and

4

Case 3:19-cr-00105-JMK-MMS   Document 100   Filed 02/22/22   Page 4 of 11

a further reduction by one (-1) point for entering a plea of guilty and thereby permitted the government to avoid trial and the court to allocate its resources more efficiently elsewhere. -3

7. **TOTAL OFFENSE LEVEL**

As a result of the foregoing adjustments, Bell's total offense level is 23 (26-3).

8. **ADVISORY GUIDELINE SENTENCING RANGE**

The Guidelines sentencing range for a person with a total offense level of 23 and a criminal history category of I is 46-57 months. (The statutory mandatory minimum is 60 months)

ADDITIONAL BACKGROUND CONSIDERATIONS

**Sentencing Goals**

9. **18 U.S.C. § 3553**

Guidelines range is advisory and not mandatory. In fashioning a sentence, this Court, after calculating the Guidelines range, should consider both the Guidelines range and the sentencing factors articulated in 18 U.S.C. 18 U.S.C. §3553(a). In light of those factors, this Court should require Bell to serve "...a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of subsection [3553(a)]". United States v. Booker, 125 S.Ct. 738, 769-70 (January 12, 2005); 18 U.S.C. Sec 3553(a). Extraordinary circumstances are not needed to justify a sentence outside the Guidelines range. United States v. Ruff, 535 F.3d 999, 1002 (Ninth Cir. 2008), United States v. Gall, 128 S.Ct. 586, 595 (2007). As stated by the Supreme Court in Gall:

> We reject, however, an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.

Gall, 128 S.Ct., at 595.

If the Court finds, after consideration of all arguments, letters (dkt 85), and presentments that Level 23/Category I provides the applicable Guidelines range (46-57months), it should consider a sentence of 36 months.

18 U.S.C. §3553(a) articulates the applicable goals and considerations as follows:

**Nature of Offense**

Bell pled guilty of one count of Distribution of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). He does not wish to minimize the gravity of his offense and acknowledges that he erred.

**Seriousness Of Offense/Respect For Law/Just Punishment**

Bell submits that a lengthy prison sentence is not required. Even though he committed a crime, he had no intent to hurt anybody. He acknowledges that his crime is not victimless.

**Deterrence**

Deterring future misconduct by Bell does not require a prison sentence. This is especially true here because the consequence of a conviction means he can never again worker in his field of training. Also, at his age, pivoting to a different career is not exactly a practical option.

More importantly, Dr. Bruce Smith suggests that Bell's risk of reoffending is low. The Carnes Addiction Inventory "suggest he has had an addiction to pornography. Shannon denied any hands-on offenses and took a polygraph that corroborated his self-report." (Dr. Smith's report at page 10). The CPORT is an instrument designed to assist in the prioritization of cases for police and other criminal justice professionals as well as gathering information relevant to offending that could be important for case management, supervision, and prioritizing treatment goals. The use of this risk assessment instrument may over-represent the risk for internet offenders without contact offenses. Shannon is in the lower risk category for all of them except age and pedophilic interest on the CPORT. He scored 2 of a potential 7 on the CPORT items. (Dr. Smith's report at page 11).

From the information available to this examiner, it appears that Shannon's sexual recidivism is low relative to a contact offense. His polygraph results support his statements that he has never crossed the line from online to contact offending. (Dr. Smith's report at page 12).

**Protection Of The Public**

As articulated by Dr. Smith's expert assessment, Bell chances of reoffending are low. Dr. Smith's assessment is backed by the fact that there is no identifiable victim Bell is accused of having physical contact with. Also, even though the Agent attempted to lure Bell by pretending to offer "her" own children, Bell made no effort of travelling to meet with the Agent and her children. Further, the polygraph test Bell voluntary took did not establish that he had any physical contact with any minors or that he lied.

Based on these facts, the risk to the public is minimal and being on supervised release (probation), Bell submits is sufficient to protect the public. "He will be best served by placement in treatment program so that he may continue to take responsibility for his offending behavior and learn avoidance and thought stopping to address his sexualization of prepubescent females/incest themes, learn to use his self-management tools from a relapse prevention plan and Good Lives plan, develop a safety net…" (Dr. Smith's report pages 12-13).

**Unwarranted Sentence Disparities**

Bell submits that his sentence of 60 months is sufficient and in line with other sentences issued by this court and relative to the factual allegations.

In case, 4:17-cr-00004-RRB, Stephen Wyzatecki, was sentenced to **38 months** in prison, to be followed by an eight-year term of supervised release, for possessing child pornography. Located on the defendant's computer were 895 images and 69 videos of child pornography. In

case, 3:18-cr-00067-SLG, Russell Cherry, was sentenced to **48 months** in prison, followed by 15 years of supervised release. In case, 3:18-cr-00123-SLG, Dennis Weston, was sentenced to serve **48 months** in prison, followed by 10 years supervised release, on one count of sexual exploitation of a child – possession of child pornography. Weston, who at that time was working as the Deputy Director of the State of Alaska Department of Juvenile Justice and served as the superintendent of McLaughlin Youth Center.

Bell did not possess as many images or videos as Stephen Wyzatecki who received a sentence of **38 months**.

### Education/Rehabilitation/Other Correctional Treatment

Incarceration for a lengthy period of time is not required to advance rehabilitation. Bell has been in counseling since the inception of this case and that has not changed. This Court may confidently find that Bell's is unlikely to reoffend.

### Restitution

While § 2259 states that restitution is mandatory, it "does not make a defendant automatically liable to pay restitution for every crime that forms part of that defendant's 'relevant conduct'" for purposes of sentencing. U.S. v. Laney, 189 F.3d 954, 965 (9th Cir. 1999). The Ninth Circuit has concluded that "[s]ection 2259 . . . incorporates a requirement of proximate causation," based on the plain language of the statute. Id. In Laney, the Ninth Circuit relied on the definition of "victim," as "the individual harmed as a result of a commission of a crime under this chapter" and the requirement that restitution be imposed for "any other losses suffered by the victim as a proximate result of the offense." Id. (quoting 18 U.S.C. § 2259(c), (b)(3)(F))

A federal district court in Maine applied Laney's reasoning to deny restitution where the defendant was sentenced for possession of child pornography. U.S. v. Berk, 666 F. Supp. 2d 182,

2009 WL 3451085 (D. Me. 2009).[1] Persons depicted in pornographic images on the defendant's computer, requested restitution. The district court denied the request because the government had not proven a causal connection between the victims' harm and the defendant's actions. 666 F. Supp. 2d 182, Id. at *8. Relying on Laney, the district court agreed that section 2259 incorporates a proximate cause requirement. The court also noted that the statutory language, "and any other losses suffered by the victim as a proximate result of the offense," because it is written in the conjunctive means that all losses suffered by the victim must be the proximate result of the defendant's actions. 666 F. Supp. 2d 182, Id. at *5. The district court found that nothing in the record demonstrated the necessary causal link: "The losses described by the Victims are generalized and caused by the idea of their images being publicly viewed rather than caused by this particular Defendant having viewed their images." 666 F. Supp. 2d 182, Id. at *7.

Adopting the reasoning in Berk, another United District Court in Montana denied a claim for restitution from a defendant charged with possession of child pornography. United States v. Rhodes, 2011 U.S. Dist. LEXIS 3015|2011 WL 108951. The court stated that:" Mr. Rhodes' name is not mentioned in the victim letters, and is mentioned only on the first page of "L.S."'s attorney's cover page. "The losses described . . . are generalized and caused by the idea of the[] images being publicly viewed rather than caused by this particular Defendant having viewed their images." Berk, 666 F. Supp. 2d 182, 2009 WL 3451085 at *7. Further, as with the other materials submitted regarding restitution, the Court has no basis for assessing the reliability of the claims in the letter or the expert report. While "L.S." has undoubtedly suffered great harm because of the abuse she suffered and the availability of these images on the internet, there is not sufficient evidence to show that her losses were proximately caused by Rhode's conduct. The United States has not met its burden to prove that Rhodes caused this victim's losses, and restitution is, therefore, not warranted." Rhodes, at *6-7.

---

[1] District court cases are not cited as authority but for whatever persuasive authority they may carry with the court.

Like in <u>Rhodes</u> and <u>Berk</u>, the government has not proved Bell caused the victim's losses. Further, there is no basis for assessing reliability of the claim. Therefore, restitution is not warranted.

### Fine

It is unnecessary for Bell to pay a fine and there is no recommendation that he pay a fine.

### Drug Treatment

Bell does not need drug treatment.

**CONCLUSION**

Before your Honor, stands a man remorseful of his deeds. A man who has struggled with mental health and emotional turmoil internally with no outlet. His dependency on medicine alone evidently was insufficient to address his other internal struggles.

Bell humbly asks this court to not separate him from his wife. He assures the court he will not end up in any other legal trouble. Bell has accepted responsibility for his conduct. Based on Dr. Smith's risk assessment, Bell presents a low risk of recidivism and while on pretrial release, Bell was exemplary.

With humility, Bell respectfully requests that the court find that he does not require a long period of isolation to meet the sentencing criteria under 18 U.S.C. §3553(a).

Bell is requesting a 36 months sentence.

Submitted this 22nd day of February 2022, in Anchorage, Alaska.

/s/ Rex Lamont Butler
745 W. 4th Avenue, Suite 300
Anchorage, Alaska 99501
(907) 272-1497
(907) 276-3306 (fax)
rexbutlercalendar@gmail.com

Certificate of Service:

I hereby certify on this 22nd day of February 2022, a true and correct copy of defendant's sentencing memorandum was served on AUSA Adam Alexander, 222 W. 7th Avenue, #9, Room 253, Anchorage, Alaska, 99513-7567, via electronic filing.

s/ Rex Lamont Butler